UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
UNITED STATES OF AMERICA,

        Plaintiff,                               10 CR 657 (SJ) (RML)

   v.

                                                 MEMORANDUM
                                                 AND ORDER

JAMAR WILLIAMS,

        Defendant.
-------------------------------------------------X
APPEARANCES

MARK J. LESKO
Acting United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201
By: Erik D. Paulsen
 Nadia I. Shihata
*Attorneys for the Government*

STAMPUR & ROTH
299 Broadway
Suite 800
New York, NY 10007
By: William J. Stampur
*Attorney for Jamar Williams*

**JOHNSON, Senior District Judge:**

Defendant Jamar Williams ("Defendant" or "Williams") moves this court to grant him compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and the First Step Act. Based on the parties' submissions and the following reasons, Williams' motion is GRANTED.

I. **Background**
   A. **Underlying Offense**

The Court assumes familiarity with the underlying facts of this case. On December 19, 2013, Defendant pled guilty to Counts One and Four of the Fourth Superseding Indictment. Count One charged Williams with racketeering in violation of 18 U.S.C. § 1961(c) with predicate acts of (1) conspiring to traffic (a) at least one kilogram of heroin, (b) at least five kilograms of cocaine and (c) at least 280 grams of cocaine base, as well as (2) conspiring to rob a rival drug dealer, as charged in Racketeering Act Nine. Count Four charged Defendant with discharging a firearm in connection with a narcotics offense in violation of 924(c)(1)(A)(iii). The Court sentenced Defendant to a custodial sentence of 60 months on Count One and 120 months on Count Four to run consecutively for a total term of 180 months. Williams has been incarcerated since his arrest on August 27, 2010 and is

scheduled to be released on August 20, 2023. He is currently housed at FCI Fort Dix, a low-security facility in New Jersey.

### B. Compassionate Release Petition

Williams is diagnosed as obese (a BMI Index over 30) and suffers from asthma and Type-2 diabetes mellitus—all conditions that place him at an elevated risk of serious illness or death from COVID-19.

Williams' institutional record suggests he has taken his rehabilitation seriously. While incarcerated, Williams, obtained his GED and participated in an Apprenticeship for Culinary Arts. Defendant has also worked as a cook at FCI Fort Dix, receiving glowing praise from his supervisors. One supervisor describes Williams as a "model inmate" and reports that Williams is "consider [sic] one of our top workers here at FCI Fort Dix on the Westside." Another supervisor writes that he would "hire inmate Williams in any Food Service Establishment." (Dkt. No. 538, Ex. C.)

Upon release, Williams has secure and stable housing with his fiancée and an offer of employment at the company of a close friend. (Dkt. No. 538, Exs. J & E.) Williams has also maintained close relationships with friends and family members who have pledged to support him through his reentry. (Dkt No. 538, Exs. E-J.)

In addition, FCI Fort Dix, the facility where Williams is incarcerated, is grappling with a severe outbreak of COVID-19. As of December 31, 2020, FCI Fort Dix has over 586 confirmed positive cases of COVID-19, more than any other Bureau of Prisons (BOP) facility in the country. (Dkt. No. 540.) This number represents a steep incline compared to the nine active confirmed cases referenced in the Government's briefing only two months before. (Dkt. No. 534.) The contrast between these confirmed case numbers show not only that COVID-19 is present at FCI Fort Dix, but also is spreading uncontrollably.

### C. Discussion

To modify an imposed term of imprisonment under the relevant subsection of Section 3582, a sentencing court must find that A) petitioner has exhausted administrative remedies; B) extraordinary and compelling reasons warrant such a reduction; C) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and D) the reduction is consistent with the sentencing factors set forth in Section 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A)(i).

### A. Exhaustion of Administrative Remedies

A defendant is considered to have exhausted all administrative remedies in an application for compassionate release following a denial by

the BOP or the lapse of 30 days from the receipt of such a request by the warden, whichever is sooner. 18 U.S.C. § 3582(c)(1)(A). Williams filed a compassionate release request through appropriate channels at the BOP on August 25, 2020. His request was denied on September 21, 2020 and thus the motion is now properly before this Court.[1]

### B. Extraordinary and Compelling Circumstances

The Sentencing Commission defines extraordinary and compelling circumstances to include a defendant's medical condition, age, family circumstances, or other reasons that alone or in combination with these circumstances are extraordinary and compelling. *See* U.S.S.G. § 1B1.13 App. Note 1(A)(i). Most relevant to Williams, Note 1(A) provides that compassionate release may be warranted if the defendant "suffer[s] from a serious physical or medical condition" which "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.*

Numerous courts in this District have found that health characteristics that place an individual at an elevated risk of serious illness or death from

---

[1] Defendant filed the instant motion *pro se* on September 3, 2020. The Court deferred ruling on the motion until defendant exhausted his administrative remedies. The Court also appointed counsel.

5

COVID-19 can constitute extraordinary and compelling circumstances in the context of the current pandemic. *See, e.g.*, *United States, v. Dowtin*, 10-CR-657 (SJ), ECF No. 529 (E.D.N.Y. Aug. 19, 2020); *United States v. Copeland*, 03-CR-1120 (FB), ECF No. 312 (E.D.N.Y. May 19, 2020); *United States v. Sedge*, 16-CR-537 (KAM), 2020 WL 2475071 (E.D.N.Y. May 13, 2020); *United States v. Hinton*, 17-CR-432 (BMC), ECF No. 167 (E.D.N.Y. May 12, 2020); *United States v. Asaro*, No. 17-CR-127 (ARR), (E.D.N.Y. Apr. 17, 2020). Additionally, more than a dozen district courts around the country have recently held that they have the authority to determine what constitutes "other reasons," under § 1B1.13, suggesting an even broader authority to determine what circumstances are extraordinary and compelling. *See United States v. Haynes*, 2020 WL 1941478, 14 (E.D.N.Y. April 22, 2020) (collecting cases).

This Court finds that Williams' serious medical Indeed, the government concedes as much. Though the Court takes note of the BOP's efforts to protect its staff and inmates, it rejects the Government's argument that Williams is not at imminent risk of developing COVID-19. The incidence of COVID-19 at FCI Fort Dix is increasing at "an alarming rate" despite the imposition of restrictive practices meant to slow the spread. *United States v. Avery*, 14-CR-810 (JMF) (S.D.N.Y. Nov. 16, 2020); *see also* Dkt. No. 540. Accordingly, the Government cannot seriously contend that Williams is not

6

at imminent of risk of contracting COVID-19, and, based on his medical conditions, suffering serious illness or death at FCI Fort Dix.

### C. Danger to the Community

The relevant Sentencing Commission Policy Statement requires this Court to consider whether the defendant is a danger to the community. *See* U.S.S.G. § 1B1.13(2). In doing so, the Court considers the following factors: 1) the nature and circumstances of the offense; 2) the weight of the evidence against the person; 3) the person's history and characteristics; and 4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *See* 18 U.S.C. § 3142(g).

Williams was convicted of a serious drug trafficking and firearm offense. His conduct was not aberrational but part of a pattern of criminal activity related to his membership in a violent set of the Bloods street gang, the "Nine-Trey Gangsters." The gang terrorized its community with near impunity for over a decade. As a member of the gang, Williams trafficked in narcotics and committed violent acts. For his crimes, Williams received an appropriately serious sentence of 180 months of incarceration.

At sentencing, the Court encouraged Williams to make the most of his time in prison for himself and for his family. By all accounts, it appears he has done so. In addition to maintaining regular employment, Williams has

7

taken advantage of numerous educational, rehabilitative, and occupational programs. Indeed, Williams' placement in FCI Fort Dix, a low-security facility, is itself evidence of his rehabilitation. While, "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement," U.S.S.G. § 1B1.13, app. n.3, it is certainly relevant to assessing the danger he poses to the community and "highly relevant to several of the § 3553(a) factors." *See Pepper v. United States*, 562 U.S. 476, 491 (2011).

As serious as Williams' criminal history is, it is inextricably intertwined with the traumatic environment he was exposed to as a child and young adult. (PSR ¶ 126.) His demonstrated rehabilitation record suggests that leaving his environment behind allowed him to mature and reprioritize his life. Further, the release plan he has put forward, which includes stable housing and employment, gives this Court confidence that he will be well-supported when released and will not return to the toxic environment of his youth. Accordingly, the Court finds that Williams has demonstrated that his release would not pose a danger to the community. *See* 18 U.S.C. § 3142(g); 18 U.S.C. § 3553(a)(2)(c).

### D.  Section 3553(a) Factors

Finally, the Court must consider the factors set forth in Section 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A)(i).  Here, the Court considers, *inter alia*, "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). In August, the Court granted compassionate release to defendant's co-conspirator, James Dowtin.  *See United States, v. Dowtin*, 10-CR-657 (SJ), ECF No. 529 (E.D.N.Y. Aug. 19, 2020). The two men have similar records and were found guilty of similar conduct. Both were incarcerated as the result of an NYPD and FBI investigation of the Nine-Trey gangsters.  As the investigation revealed, the men were longtime associates and members of the Nine-Trey Gangsters who trafficked drugs and used extreme violence to control the drug trade in their neighborhood.

The Court also considers the need for specific and general deterrence. *See* § 3553(a)(2)(c).  Williams has served approximately 144 months of his 180-month sentence.  As outlined above, Williams' current custodial sentence is no longer necessary and releasing him with less than 36 months left in his sentence will by no means undermine general deterrence.  *See United States v. El-Hanafi*, 2020 WL 2538384, at *5 (S.D.N.Y. May 19, 2020) (finding that releasing defendant convicted of material support for Al Qaeda "33 months

9

early from a 180-month sentence in order to protect his life and health during an unprecedented global pandemic will not undermine general deterrence.")

### D. Conclusion

For the foregoing reasons, Williams' motion for compassionate release is GRANTED. He is hereby resentenced to time served. He is ordered released to the home of his fiancée, Keisha Peters, in Brooklyn, New York. All other aspects of his sentence remain unchanged. This order is stayed for up to fourteen days, for the verification of the defendant's residence and to make appropriate travel arrangements. The defendant shall be released as soon as a residence is verified by Probation and appropriate travel arrangements are made. There shall be no delay in ensuring travel arrangements are made. If more than fourteen days are needed, the Government shall immediately notify the Court and show cause why the stay should be extended.

Dated: April 26, 2021
Brooklyn, New York

signed Sterling Johnson, Jr., U.S.D.J.
Sterling Johnson, Jr., U.S.D.J.